UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BONNIE WISDOM, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-0299-M |
| | § | |
| PORTFOLIO RECOVERY | § | |
| ASSOCIATES, L.L.C.; and DOE 1-5 | § | |
|   Defendants. | § | |

## DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, L.L.C.'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant Portfolio Recovery Associates, L.L.C. ("PRA"), by and through the undersigned counsel, files its Motion for Summary Judgment and to respectfully show unto the Court as follows:

Respectfully submitted,

**ROBBIE MALONE, PLLC**


  /s/ Robbie Malone_____
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas  75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT***

## Table of Contents

Table of Authorities ..................................................................................................................3

DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, L.L.C.'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ..................................................................................4

BACKGROUND FACTS ............................................................................................................4

SUMMARY JUDGMENT STANDARD ....................................................................................5

ARGUMENT AND AUTHORITIES ..........................................................................................6

    A.   Most of Plaintiff's FDCPA Claims Are Barred by the Statute of Limitations.................6

    B.   Summary Judgment Should Be Granted on Plaintiff's FDCPA Claims ..........................6

       1.   Plaintiff Has No Evidence to Support Her Alleged FDCPA Violations .....................7

CONCLUSION ..........................................................................................................................14

## Table of Authorities

### Cases

*Arteaga v. Asset Acceptance, LLC*, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010)...........................................................................................................................7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986)...........................................5

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)........................................5

*Garza v. MRS BPO, LLC*, No. 4:12-cv-01057, at 4 (S.D. Tex. 2012) .........................................12

*Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009)...........................................................................7, 9

*Hicks v. Am.'s Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 516 (N.D. Ohio 2011)...............12

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985).............................................7

*Katz v. Capital One*, No. 1:09-cv-1059 (LMB/TRJ), 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010)..8

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)........................................................................8

*Krapf v. Nationwide Credit, Inc.*, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, 2010 U.S. Dist. LEXIS 57849 *6-8 (C.D. Cal. May 21, 2010).....................................................................7

*Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005)...............................................5

*Matsusheta Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356 (1986) ...............5

*Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, slip op. at 17 (E.D. Mich. Sept. 30, 2008). .................9

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003)......................5

*Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009)..............8

*Strand v. Diversified Collection Serv.*, 380 F.3d 316, 318-19 (8th Cir. 2004)..............................11

*Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010)....................................8

*Udell v. Kan. Counselors, Inc.*, 313 F. Supp. 2d 1135, 1143 (D. Kan. 2004)...............................12

*Waite v. Financial Recovery Services, Inc.*, No. 8:09-cv-02336-T-33AEP (M.D. Fla. Dec. 16, 2010)........8

### Statutes

15 U.S.C. § 1692c(a)(1) ..............................................................................................................10

15 U.S.C. § 1692c(c)....................................................................................................................10

15 U.S.C. § 1692d ...............................................................................................................6, 7, 11

15 U.S.C. § 1692e(11)..................................................................................................................13

15 U.S.C. § 1692k(d). ....................................................................................................................6

### Rules

Fed. R. Civ. P. 56(c).......................................................................................................................5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BONNIE WISDOM, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-0299-M |
| | § | |
| PORTFOLIO RECOVERY | § | |
| ASSOCIATES, L.L.C.; and DOE 1-5 | § | |
|    Defendants. | § | |

## DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, L.L.C.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant Portfolio Recovery Associates, L.L.C. ("PRA"), by and through the undersigned counsel, files its Motion for Summary Judgment and to respectfully show unto the Court as follows:

## I.
## BACKGROUND FACTS

1.      In July of 2011, PRA acquired two consumer accounts of Bonnie Wisdom ("Wisdom" or "Plaintiff" herein). Later that year, PRA began attempting to collect on the outstanding accounts through sending letters and placing phone calls to Plaintiff. On January 24, 2014, Plaintiff filed her Complaint with this Court alleging violations of the Fair Debt Collections Practices Act. Doc No. 1. Plaintiff claims that PRA violated the FDCPA by harassing her with the volume of collection calls and by failing to identify themselves as debt collectors during those collection calls. *Id.* at 2-3. PRA will show that they were in full compliance with the FDCPA at all times while attempting to collect on Plaintiff's accounts, and that most of the complained of activity took place beyond the 1-year statute of limitations imposed by the FDCPA. Plaintiff is seeking statutory damages, her attorney's fees and costs, and pre-judgment interest. *Id.* at 4. PRA now

brings this Motion for Summary Judgment requesting this Court to render judgment on Plaintiff's claims based on Plaintiff's the relevant statute of limitations and insufficient evidence.

## II.
## SUMMARY JUDGMENT STANDARD

2.      The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). Additionally, a motion for summary judgment serves to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). A finding for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Celotex*, 477 U.S. at 372. When a defendant moves for summary judgment, it may either (a) submit summary judgment evidence negating the existence of a material element of the plaintiff's claim, or (b) show there is no evidence to support an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 322-25. Thus, the movant may identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). This can be done by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

3.      If the movant meets this initial burden, the non-movant then must introduce evidence establishing that there is a genuine issue of material fact. *Matsushita*, 475 U.S. at 585-86. In making the decision whether a fact issue exists, the facts and inferences to be drawn from them

must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

### III.
### ARGUMENT AND AUTHORITIES

**A.      Most of Plaintiff's FDCPA Claims Are Barred by the Statute of Limitations**

4.      The FDCPA states "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, **within one year from the date on which the violation occurs.**" 15 U.S.C. § 1692k(d).

5.      Plaintiff filed her Complaint on January 24, 2014, placing the cutoff date for any FDCPA claims at January 25, 2013. Any claimed violations that occurred prior to January 25, 2013 are no longer actionable under the FDCPA. Since January 25, 2013, PRA placed 33 calls to Plaintiff, 32 of those calls were not answered. Exhibit A at 4-5. The one call that was answered contained only one sentence from the caller, and no response from the recipient. The entire transcript of the call is as follows:

Caller: "Hello, how are you doing, may I speak to Bonnie?"

Recipient: No response.

Exhibit B. PRA has committed no violations of the FDCPA at any time while attempting to collect on Plaintiff's account, including the short period of time that is within the statute of limitations.

**B.      Summary Judgment Should Be Granted on Plaintiff's FDCPA Claims**

6.      Plaintiff is alleging that PRA violated 15 U.S.C. § 1692d, § 1692d(6), and § 1692e(11). Plaintiff's claims ultimately fail because Plaintiff has failed to put forth any evidence to support

her claim that an FDCPA violation occurred and because Plaintiff's FDCPA claims fail as a matter of law.

**1.      Plaintiff Has No Evidence to Support Her Alleged FDCPA Violations**

   *a.      15 U.S.C. § 1692d*

7.      In order for there to be a violation of 15 U.S.C. § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

8.      Plaintiff's claims allege that PRA called Plaintiff multiple times and from multiple numbers, but provides no further evidence or explanation to show that the calls rose to the level of harassment. These claims require Plaintiff to prove more than just the fact that calls were made. To prove a claim under §§ 1692d, a plaintiff must show that the repeated calls were made *with the intent* to annoy, abuse, or harass. *See Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009) [emphasis added]. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). However, courts may resolve the question as a matter of law in appropriate cases. *Jeter*, 760 F.2d at 1179-80; *see Arteaga v. Asset Acceptance, LLC*, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010) ("Although there is no bright-line rule, certain conduct generally is found to either constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.").

9.      "In determining liability under § 1692d(5), courts often consider the volume and pattern of calls made to the debtor."[1] *Krapf v. Nationwide Credit, Inc.*, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, 2010 U.S. Dist. LEXIS 57849 *6-8 (C.D. Cal. May 21, 2010). However, courts have found that "daily" calls, unaccompanied by other egregious conduct, such as calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop, is insufficient to raise a triable issue of fact for the jury. *Waite v. Financial Recovery Services, Inc.*, No. 8:09-cv-02336-T-33AEP (M.D. Fla. Dec. 16, 2010) (citing cases). For example, "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages." *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009). Also, "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d. *See Arteaga*, 2010 WL 3310259, at *16. Finally, while calling 57 times over a 20-day period appeared "somewhat high," defendant's conduct still failed to constitute a violation of § 1692d(5) as a matter of law where defendant left a total of six messages, made no more than seven calls in a single day, did not call back the same day after leaving a message, and did not repeatedly make calls after it was asked to cease. *See Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010); *see Katz v. Capital One*, No. 1:09-cv-1059 (LMB/TRJ), 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010).

---

[1] "Courts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'" *Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (quoting *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004)).

10.     Additionally, the Court's review of the facts is not limited to the defendant's conduct. In *Waite v. Financial Recovery Services*, the court, in evaluating whether the defendant harassed the plaintiff under § 1692d(5), noted that the plaintiff never indicated that she ever confirmed or disputed the debt or made any allegation that she asked the defendant to stop contacting her. The plaintiff argued that the court's inquiry into her actions was inappropriate because it placed a burden on her that was not imposed by the FDCPA. *See Id.* The court partially agreed, stating that "whether a valid debt exists does not matter."[2] *Id.* "However, the Court's interest in this point reflects a desire to clarify the issue of whether Defendant intended to 'annoy, abuse, or harass' in violation of § 1692d(5) or whether Defendant, believing Plaintiff's debt to be valid, merely endeavored to collect that debt, and encountered difficulty in establishing contact with Plaintiff." *Id.* "A high volume of unanswered calls without any prior records of substantive conversations between Plaintiff and Defendant tends to suggest a difficulty in reaching Plaintiff rather than an intent to harass."[3] *Id.*; *see Saltzman*, 2009 WL 3190359, at *67- & n. 4 ("the significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with Plaintiff...suggests a 'difficulty of reaching Plaintiff, rather than an intent to harass.'") (quoting *Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, slip op. at 17 (E.D. Mich. Sept. 30, 2008).

11.     In order to determine whether PRA made its telephone calls with the intent to annoy, abuse or harass Plaintiff in the present case, the Court must consider not only the volume of calls made, but also the pattern of those calls, whether PRA engaged in any egregious behavior, and Plaintiff's actions in response to the calls. PRA did not place any telephone calls to Plaintiff for

---

[2] (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.").

[3] *See Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009) (a plaintiff must show that the repeated calls were made with the intent to annoy, abuse, or harass, as "Congress did not intend the FDCPA to completely bar any debt collection calls.").

the purposes of harassment; rather any telephone calls made to Plaintiff were in order to collect a valid debt.

12.     As a part of its business, PRA keeps track of the telephone calls and attempted calls it makes to consumers. Exhibit A. In the present case, PRA kept a record of the calls it made to Plaintiff's telephone numbers. *Id.* According to these records, PRA made 33 call attempts to Plaintiff within the statute of limitations, a period of 60 days between January 30 and March 30, 2013. *Id.* at 4-5. Whether answered or not, the maximum number of calls on any single day was three (3) (February 19, 2013 and February 27, 2013). *Id.* at 5. This means that calls were not made on a daily basis, and, again, maximum of three (3) calls were made on any single day. *Id.*

13.     Aside from the volume and pattern of the calls, which do not, on their own, indicate any bad intent, there is no evidence of the requisite egregious conduct. None of the alleged calls were made at unusual or inappropriate times. The FDCPA allows a debt collector to assume that calls made between 8 a.m. and 9 p.m. local time at the consumer's location are convenient unless otherwise notified. *See* 15 U.S.C. § 1692c(a)(1).

14.     Furthermore, there is no evidence that PRA made numerous calls when attempting to contact Plaintiff. Instead, only twice were three (3) calls made on the same day, and there was no answer on any of these phone calls. Exhibit A at 5. This is far short of the seven (7) calls in one day permitted in *Tucker* above. There is no evidence of calls immediately after a hang up by Plaintiff and there is no evidence of calls to Plaintiff's friends or family. *See Waite v. Financial Recovery Services, Inc.*, No. 8:09-cv-02336-T-33AEP. Also, there is no evidence that PRA left any messages threatening Plaintiff.

15.     Importantly, Plaintiff did not send any letters to PRA telling it to stop calling and she did not ask anyone to send a letter on her behalf. The reason why it is so important that Plaintiff did

not send any letter to PRA asking it to stop calling is because the FDCPA requires such correspondence. PRA never received any correspondence from Plaintiff asking it to cease its debt collection activities; in fact, Plaintiff never made even a verbal request that PRA cease its collection activities. § 1692c(c) of the FDCPA states that only "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication [shall the collector] not communicate further with the consumer..." *See* 15 U.S.C. § 1692c(c). This is because a legitimate debtor could easily say that the collector was calling the wrong number or to stop calling and, thereby, short circuit the entire collection process. While the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors," it was also enacted "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged..." *Strand v. Diversified Collection Serv.*, 380 F.3d 316, 318-19 (8th Cir. 2004). Plaintiff did not notify PRA in writing to cease its debt collection attempts. PRA's attempts at contacting Plaintiff did not constitute egregious behavior, but rather indicates a good-faith effort at collecting Plaintiff's debt.

16.     Plaintiff has failed to present evidence of any other egregious conduct beyond the calls themselves. Without this, it is equally likely that the calls represent a difficulty in collecting a debt from a debtor who demands, without putting it in writing, that PRA stop calling as they represent any intent to annoy, abuse or harass Plaintiff. Plaintiff has failed to present any evidence that PRA intended to annoy, abuse or harass her.

17.     The account notes clearly show that PRA's collection efforts did not give rise to the level required for harassment and egregious collection practices. Because these account notes clearly

negate the intent required constituting a violation of the FDCPA, this Court should summarily render judgment as a matter of law against Plaintiff with respect to these claims.

### b. 15 U.S.C. § 1692d(6)

18.     Plaintiff alleges that PRA violated FDCPA § 1692d(6) and § 1692e(11).   FDCPA § 1692d(6) makes it a violation to make "the placement of telephone calls without meaningful disclosure of the caller's identity."

19.     As noted above, PRA placed 33 calls to Plaintiff within the statute of limitations in this case. Exhibit A at 4-5. Of the 33 calls placed, 31 ended without contact and without a message being left. One call was answered, and, as transcribed above, resulted in the caller simply asking for Bonnie, and the recipient of the call giving no response whatsoever before the call is disconnected. One call resulted in a recording being left on Plaintiff's voicemail. The recording that was left contains no dialogue whatsoever, only six (6) seconds of dead air before the call is disconnected.

20.     Plaintiff has failed to put forth any evidence or precedence that demonstrates a violation of this FDCPA provision can occur without Plaintiff even answering the phone.  It would have been impossible for anyone to provide "meaningful disclosure of the caller's identity," without Plaintiff actually answering his telephone.   Surely, such a standard is outside the spirit and purpose of the FDCPA.   There is no requirement under the FDCPA that a message be left after each call.  See Waite v. Financial Recovery Services, Inc., 2010 WL 5209350, *5, n. 9 (M.D. Fla. 2010). Further, courts have held that a "dead air" call in which no substantive message is left is "more akin to a missed call than a substantive voicemail." Hicks v. Am.'s Recovery Solutions, LLC, 816 F. Supp. 2d 509, 516 (N.D. Ohio 2011); Udell v. Kan. Counselors, Inc., 313 F. Supp. 2d 1135, 1143 (D. Kan. 2004). The "leaving of a single blank voicemail does not require

'meaningful disclosure' of the caller's identity." *Garza v. MRS BPO, LLC*, No. 4:12-cv-01057, at 4 (S.D. Tex. 2012). PRA was in full compliance with the FDCPA while placing collection calls to Plaintiff.

21.     FDCPA §1692e(11) penalizes the "failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose..." While not specifically separated in the statute, § 1692e(11) recognizes two distinct categories of communications. The first category is the initial communication, whether written or oral, between the debt collector and consumer, and it prohibits "[t]he failure to disclose...that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose..." 15 U.S.C. § 1692e(11). The second category applies to all communications after the initial communication, prohibiting "the failure to disclose in subsequent communications that the communication is from a debt collector..." *Id.* Plaintiff never alleges that any of the communications she allegedly received from PRA constituted an "initial" communication, nor does she provide evidence to support her claims that any initial communication did not include the statutory "mini-miranda."

22.     Plaintiff does provide specific dates for the calls she alleges violate the FDCPA's requirement for collectors to identify themselves and the nature and purpose of their calls. Doc. No. 1 at 3. PRA's records do not reflect any of these calls resulting in actual communication with the account holder. Exhibit A at 4-5. The first date Plaintiff provides, January 24, 2013, is outside the FDCPA's 1-year statute of limitations, as discussed *supra*. On the second date, February 23, 2013, PRA placed one (1) call to Plaintiff at 1:59 PM, which reached Plaintiff's answering machine/voicemail, and no message was left. *Id.* On the third date, February 27, 2013,

PRA placed three (3) calls to Plaintiff. *Id.* The first two (2) calls, at 11:38 AM and 5:07 PM, resulted in no contact with either a person or messaging service; the third call, at 8:47 PM reached Plaintiff's answering machine/voicemail, and no message was left. *Id.* On the fourth date, March 1, 2013, PRA placed two (2) calls to Plaintiff. *Id.* The first call, at 3:59 PM, resulted in no contact but rather an idle line after the number was dialed. *Id.* The second call, at 8:41 PM, resulted in no contact with either a person or messaging service. *Id.* On the fifth and final date provided by Plaintiff, March 7, 2013, PRA placed two (2) calls to Plaintiff, at 4:04 PM and 8:53 PM, which reached Plaintiff's answering machine/voicemail, and no message was left. *Id.*

23.    Without evidence that Plaintiff actually answered PRA's calls, or that PRA left voice recordings that actually contained a message, Plaintiff's § 1692d(6) and § 1692e(11) simply cannot survive summary judgment. PRA's records clearly show that that a.) the dates Plaintiff provides for the allegedly violative calls are incorrect, b.) the only call from PRA that did result in a connection contained no prohibited communication, and c.) the only voicemail that PRA left for Plaintiff contained no communication whatsoever, much less a communication that violates the FDCPA.

## IV.
## CONCLUSION

24.    Plaintiff has no legitimate claim against PRA. Most of the events Plaintiff complains of are barred by the one-year statute of limitations imposed by the FDCPA; however, the staleness of her case is secondary only to its lack of merit.

25.    Plaintiff has no evidence of any violations committed by PRA because no violations occurred. Plaintiff claims that PRA called her multiple times, and from multiple numbers, which constituted harassment under the FDCPA, but has no evidence of activity that would contradict settled precedence declaring PRA's collection efforts fully compliant with the FDCPA. As

evidenced by PRA's complete records of Plaintiff's account, neither the time, volume, nor content of the calls PRA placed to Plaintiff in their attempt to collect this valid debt rose to the level of a violation.

26.     Plaintiff also claims that PRA failed to make meaningful disclosure of their identity during collection calls, but cannot support this with evidence of any kind. PRA's internal records prove, again, that the two calls that did result in a connection on the other end did not contain sufficient communication to necessitate the type of disclosure required by the FDCPA. Plaintiff simply does not have a claim that raises even the slightest question of fact or law necessary to survive summary judgment.

WHEREFORE PREMISES CONSIDERED, Portfolio Recovery Associates, L.L.C. respectfully requests that this Court grant its Motion for Summary Judgment in its entirety and for such other and further relief to which it may be justly entitled.


Respectfully submitted,

**ROBBIE MALONE, PLLC**


  /s/ Robbie Malone_____
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231
TEL: (214) 346-2630
FAX: (214) 346-2631

*COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic filing on this _3rd_ day of October, 2014 to:

Robert Amador
CENTENNIAL LAW OFFICES
9452 Telephone Road, Suite 156
Ventura, CA 93004

/s/Robbie Malone
ROBBIE MALONE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BONNIE WISDOM, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-0299-M |
| | § | |
| PORTFOLIO RECOVERY | § | |
| ASSOCIATES, L.L.C.; and DOE 1-5 | § | |
|    Defendants. | § | |

<u>**AFFIDAVIT**</u>

**STATE OF VIRGINIA**

**CITY OF NORFOLK**

    **BEFORE ME,** the undersigned authority, on this day personally appeared Nyetta Jackson, known to me to be the person whose name is subscribed on this instrument and, having been first duly sworn, upon her oath deposes and states as follows:

    I, the undersigned, am over the age of eighteen (18) years, of sound mind, have never been convicted of a felony or a misdemeanor of moral turpitude and am fully competent and qualified to make this Affidavit. I have personal knowledge of all of the facts set forth in this Affidavit and all facts and statements contained herein are true and correct of my own personal knowledge.

    I am Vice President of Operations for Portfolio Recovery Associates, L.L.C. – Hampton (hereinafter, "PRA"). PRA's primary legal practice area is the collection of consumer debt.

    PRA maintains detailed records of all client accounts, including call logs, notes, and recordings, as part of its business records. In my capacity as VP-Ops – Hampton, I am familiar with and have access to these business records maintained by PRA in the normal course of its business.

I performed a search of PRA's records on Plaintiff's account, which returned full account notes. I reviewed the account notes and hereby attest to their completeness and accuracy. These account notes have been attached and labeled Exhibit A.

I performed a search of PRA's records on Plaintiff's account, which returned three (3) recordings of calls that were placed to Plaintiff. One of the recordings occurred on January 10, 2013, which is outside the statute of limitations in this case, and has therefore been omitted from the pleadings; the other two (2) recordings have been attached and labeled Exhibits B-C. I have reviewed these recordings, and hereby attest to their authenticity. The following is a transcript of the call recordings labeled Exhibit B and Exhibit C:

> **Exhibit B** is the recording of a call that was placed to Plaintiff on February 5, 2013. The call last a total of seventeen (17) seconds; the contents of the call are transcribed bellow in their entirety:
>
> > Caller: "Hello, how are you doing, may I speak to Bonnie?"
> >
> > Recipient: No response.
>
> **Exhibit C** is the recording of a call that was placed to Plaintiff on March 30, 2013. The call lasts six (6) seconds and contains no dialogue whatsoever, only dead air.

These account notes and recordings were kept in the regular course of business, and it was the regular course of our business, with knowledge of the act, event, condition or opinion to make the record or to transmit information thereof to be included in this record; and the record was made at or near the time or reasonably soon thereafter. The record attached hereto is the original or exact duplicate of the original.


[SIGNATURE ON NEXT PAGE]

Name: Nyetta Jackson

Firm:    Portfolio Recovery Associates, L.L.C.

Title:    Vice President of Operations – Hampton

SWORN TO AND SUBSCRIBED before me, a Notary Public, on this the 29th day of

September, 2014.

Notary Public in and for the State of _Virginia_

My Commission Expires:

7/31/2015

